# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| LINDALE PLAZA, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:26-cv-676 |
| | § | Judge Mazzant |
| NATIONAL FIRE & MARINE INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant National Fire & Marine Insurance Company's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Dkt. #4). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This is a property insurance dispute. After a hailstorm damaged Plaintiff Lindale Plaza, LLC's commercial building, Plaintiff filed suit in Texas state court, seeking to recover proceeds from its insurer (Dkt. #1 at ¶ 1). Defendant removed the action to this Court, asserting diversity of citizenship as the basis for jurisdiction (Dkt. #1). On July 6, 2026, Defendant filed this Motion, requesting that the Court transfer this case to the District of Nebraska (Dkt. #4). Defendant seeks to enforce a forum-selection clause and choice-of-law provision, the text of which reads:

> The Insured and Insurer agree that the construction, validity, and performance of this Policy will be governed by the laws of the state of Nebraska . . . . The Insured and Insurer agree that all suits, actions, and proceedings arising out of or related to this Policy will be litigated in the District Court of Douglas County, Nebraska or in the U.S. District Court of Nebraska . . . .

(Dkt. #4 at ¶ 5). Plaintiff filed a Response (Dkt. #8), and Defendant filed a Reply (Dkt. #11).

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [the general venue statute] by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 313 (5th Cir. 2008).

For the ordinary § 1404(a) motion, the Court makes a threshold inquiry into "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004). The Court then considers the propriety of transfer based on the convenience of the parties (referred to as the "private interest factors") and various public interest considerations (the so-called "public interest factors"). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* In determining whether to transfer a case under a forum-selection clause, the Court first determines whether the forum-selection clause is mandatory or permissive. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016). The Court then decides whether the forum-selection clause applies to the dispute at hand, which involves two separate determinations: (1) whether the forum-

selection clause is valid and enforceable; and (2) whether the case falls within the scope of the forum-selection clause. *Id.* at 770.

Forum-selection clauses are presumptively valid and should be enforced "unless [the party opposing enforcement can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991); *Haynsworth v. The Corp.*, 121 F.3d 956, 962–63 (5th Cir. 1997). The party resisting transfer therefore bears the "heavy burden" of showing that enforcement of the clause would be unreasonable under the circumstances. *See Weber*, 811 F.3d at 773–74; *Haynsworth*, 121 F.3d at 962–63.

Ultimately, if the forum-selection clause is valid and enforceable, district courts are required "to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 571 U.S. at 63. First, the plaintiff's choice of forum carries no weight. *Id.* Second, the court "must deem the private-interest factors to weigh entirely in favor of the pre-selected forum." *Id.* at 64. That is, the court may consider arguments only about public interest factors. *Id.* Because the public interest factors will rarely defeat a motion to transfer, "forum-selection clauses should control except in unusual cases." *Id.* Third, the transferee venue—that is, the pre-selected forum—will not carry with it the original venue's choice-of-law rules. *Id.*

**ANALYSIS**

The Court must decide whether to enforce a forum-selection clause that, by its plain terms, mandates venue in the requested forum. Plaintiff raises several equitable arguments, and urges the Court to disregard the plain language of the clause (Dkt. #8 at ¶¶ 7–8). But these arguments cannot overcome the "strong presumption in favor of the enforcement of mandatory [forum-selection clauses]." *Weber*, 811 F.3d at 773. In line with this Court's precedent, the Court will enforce the

plain language of the agreement. *See Marquis Software Sols., Inc. v. Sonicwall Inc.*, No. 4:26-CV-195, 2026 WL 2912908, at *6 n.1 (E.D. Tex. Sept. 28, 2026) (citing *Weber*, 811 F.3d at 773–74) ("The Fifth Circuit readily upholds forum-selection clauses at early stages of litigation.").

**I. The parties entered a contractually valid forum-selection clause.**

When a party seeks a venue transfer pursuant to a forum-selection clause, the Court must first determine whether the parties entered a "contractually valid forum-selection clause." *Atl. Marine*, 571 U.S. at 581 n.5. To determine whether there is a contractually valid forum-selection clause, the Court must consider "(1) whether the forum-selection clause is mandatory or permissive; (2) whether the forum-selection clause is valid and enforceable; and (3) whether this action falls within the scope of the forum-selection clause." *Marquis Software*, 2026 WL 2912908, at *5 (citing *Weber*, 811 F.3d at 768–75).

**A. The forum-selection clause is mandatory.**

The Court must determine whether the forum-selection clause is mandatory or permissive. "Only mandatory clauses justify transfer or dismissal." *Weber*, 811 F.3d at 768. "An FSC is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum . . . ." *Id.*

As a threshold matter, the Court must determine what law governs interpretation of the contract. *See DBS Sols. LLC v. Infovista Corp.*, No. 3:15-CV-3875-M, 2016 WL 3926505, at *2 (N.D. Tex. July 21, 2026). "Although enforceability of a forum selection clause is analyzed under federal law, where there exist both valid forum selection and choice of law clauses, the substantive law identified in the choice of law clause governs interpretation of the forum selection clause." *Provitas, LLC v. Quality Ingredients Corp.*, No. 4:21-CV-196, 2021 WL 5907790, at *12 (E.D. Tex. Dec. 14, 2021) (citations omitted). Here, the parties' choice-of-law provision selects Nebraska law to govern

the "construction, validity, and performance" of the contract (Dkt. #4 at ¶ 5). Therefore, Nebraska law governs interpretation of the forum-selection clause. *See Provitas*, 2021 WL 5907790, at *12.

Under Nebraska law, the forum-selection clause is mandatory because it contains a mutual promise to litigate exclusively, if at all, in Nebraska. A forum-selection clause is mandatory if it requires an action to be "brought only" in the designated state. *Polk Cnty. Recreational Ass'n v. Susquehanna Patriot Com. Leasing Co.*, 734 N.W.2d 750, 758 (Neb. 2007). A forum-selection clause is permissive if it does "not [require] that actions be brought only" in the designated state. *Id.* Here, the parties agreed that "all suits, actions, and proceedings arising out of or related to this Policy *will* be litigated in [Nebraska]." (Dkt. #4 at ¶ 5 (emphasis added)). This language designates Nebraska as the exclusive forum, and therefore the forum-selection clause is mandatory. *See Polk Cnty.*, 734 N.W.2d at 758–59 (applying the same reasoning to the language "shall be brought").

**B. The forum-selection clause is valid and enforceable.**

The forum-selection clause is valid and enforceable because, contrary to Plaintiff's arguments, it is not unreasonable under the circumstances. Courts are to treat forum-selection clauses as "presumptively valid." *Weber*, 811 F.3d at 774. However, the presumption of enforceability may be overcome "by a clear showing that the clause is 'unreasonable' under the circumstances." *Id.* at 773 (citation modified). The Fifth Circuit defined "unreasonableness" in *Weber*, and Plaintiff raises two arguments under this precedent. *See id.* Plaintiff claims that the forum-selection clause is unreasonable because (1) Defendant procured the forum-selection clause by fraud and (2) the clause forces a Texas property owner to litigate its insurance dispute in Nebraska (Dkt. #8 at ¶¶ 5–8).

**1. Plaintiff has not demonstrated that Defendant fraudulently procured the forum-selection clause.**

Plaintiff has not demonstrated that Defendant fraudulently obtained the forum-selection clause because Plaintiff has provided no evidence, other than blanket assertions, that Defendant committed any fraud. If the incorporation of a forum-selection clause "was the product of fraud or overreaching," the Court may find the clause unreasonable and decline to enforce it. *Weber*, 811 F.3d at 773–74 (citation modified).

Plaintiff claims that Defendant committed fraud when it "intentionally elected not to disclose to Plaintiff that it would seek to force Plaintiff to litigate any breach of contract in a non-Texas forum." (Dkt. #8 at ¶ 6). The Court cannot accept Plaintiff's argument that, before offering the contract, Defendant owed a duty to disclose its intent to enforce the forum-selection clause contained in the agreement. It contradicts the well-settled rule that a party does not commit fraud or act in bad faith by merely enforcing their rights under a contract, absent proof of other conduct. *See Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 957 (5th Cir. 1981) (citation omitted) (applying state law) ("The mere exercise of one's contractual rights, without more, cannot constitute such a breach."); *FCCI Ins. Co. v. Marine Tech Servs.*, No. 4:20-CV-2716, 2021 WL 3377572, at *4 (S.D. Tex. June 14, 2021) (citation omitted) ("The exercise of a contractual right, without more, cannot form the basis for bad faith."). Moreover, Plaintiff had a duty to read the contract and know its terms, and therefore cannot claim unfair surprise by Defendant's decision to enforce the forum-selection clause. *See Cohen v. Mt. Hawley Ins. Co.*, No. 3-11-CV-01899-F, 2013 WL 12284644, at *7 (N.D. Tex. Jan. 7, 2013) ("One party's failure to carefully examine a contract does not necessarily mean the other party committed fraud or negligent misrepresentation."); *Hayes v. Wells Fargo Home Mortg.*, No. CIV.A. 06-1791, 2006 WL 3193743, at *6 n.6 (E.D. La. Oct. 31, 2006) (citation

modified) (applying state law) ("Enforcing your rights under a contract should not be looked upon as doing something wrong."). As such, the Court rejects Plaintiff's argument that Defendant committed fraud when it merely enforced its contractual right to an exclusive forum.

Plaintiff's fraud argument also fails because Plaintiff provides no evidence of any alleged fraudulent misrepresentation that Defendant made. A plaintiff cannot establish a forum-selection clause was procured by fraud when that plaintiff produces "no evidence" of the clause being "obtained . . . by fraud or overreaching." *Shute*, 499 U.S. at 595. Plaintiff broadly asserts that the Court should find the forum-selection clause invalid because "Plaintiff has pled fraudulent concealment . . . ." (Dkt. #8 at ¶ 6). But this blanket assertion of fraud, by mere reference to the pleadings, cannot overcome the presumption of enforceability. *See Weber*, 811 F.3d at 774; *Shute*, 499 U.S. at 595.

Plaintiff also argues that the contract is invalid because the agreement represents "an insurer taking advantage of its unequal bargaining power over a Texas entity." (Dkt. #8 at ¶ 8). This argument is likewise unavailing. The Fifth Circuit has explained that "[a]rguments that go to the validity of the contract as a whole do not prevent enforcement of an FSC . . . ." *Weber*, 811 F.3d at 773. In effect, the Court is only to consider arguments that specifically address the forum-selection clause's invalidity, as opposed to arguments that address the contract as a whole. *Id.* at 773–74 ("[T]he court is to treat the FSC as both severable and presumptively valid."); *see Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 748 (N.D. Tex. 2018) (enforcing a forum-selection clause because the alleged fraud was not shown to be "specific to the forum-selection clause"). Plaintiff's argument attacks the enforceability of the contract as a whole, as opposed to just the forum-selection clause, and therefore the Court will not consider it at the early venue-

transfer stage. *See Weber*, 811 F.3d at 773–74. For these reasons, Plaintiff has not demonstrated that Defendant obtained the forum-selection clause by fraud.

**2. The forum-selection clause is not otherwise unreasonable.**

The forum-selection clause is reasonable because it does not deprive Plaintiff of its day in court. Plaintiff argues that the forum-selection clause is not valid because "it is not reasonable to require a Texas Plaintiff and resident who is complaining about damages that were caused to Texas property to litigate the issues in Nebraska." (Dkt. #8 at ¶ 7). However, "unreasonableness" is a high legal bar in this context, and requires more than mere inconvenience, as the Fifth Circuit has explained:

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (citations omitted). Under the Fifth Circuit's standard, it is insufficient to merely claim that a forum-selection clause is unfair; a plaintiff must demonstrate that the unfairness will "deprive the plaintiff of a remedy[,]" or that the unfairness will deprive the plaintiff of "[its] day in Court." *Id.* (citation modified). Here, Plaintiff has not alleged that the forum-selection clause will deprive Plaintiff of a remedy, and Plaintiff cites no compelling authority that indicates it would violate public policy to enforce the provision (*See* Dkt. #8). As such, Plaintiff has not carried its "heavy burden of establishing that, in these particular circumstances, enforcement of the clause would be unreasonable . . . ." *Davis v. Valsamis, Inc.*, 181 F. Supp. 3d 420, 427 (S.D. Tex. 2016). For these reasons, the forum-selection clause is valid and enforceable.

**C. This action falls within the scope of the forum-selection clause's language.**

This suit falls within the scope of the forum-selection clause because the plain language of the clause designates Nebraska as the exclusive forum for "all suits" relating to the insurance policy. The Court must interpret the language of the agreement under the parties' chosen law to determine whether the suit falls within the language of the forum-selection clause. *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 301–02 (5th Cir. 2016). Under Nebraska law, courts give "clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them." *Kasel v. Union Pac. R.R. Co.*, 865 N.W.2d 734, 738 (Neb. 2015) (footnote omitted).

Here, the parties' agreement provides that "all suits, actions, and proceedings arising out of or related to this Policy will be litigated in . . . Nebraska." (Dkt. #4 at ¶ 5). Plaintiff brings actions for fraud, breach of contract, and violations of various Texas insurance and consumer protection statutes (Dkt. #1-2 at pp. 7–10). Crucially, all of these claims stem from Plaintiff's allegation that Defendant failed to "timely pay insurance benefits under the policy." (Dkt. #1-2 at p. 6). Because these claims relate to the alleged nonpayment under the policy, Plaintiff's claims are "arising out of or related to" the parties' insurance policy, and the claims therefore fall within the plain language of the forum-selection clause (*See* Dkt. #4 at ¶ 5).

Plaintiff argues that the forum-selection clause does not encompass the entirety of this action because "Plaintiff has alleged tort claims in addition to the breach of contract cause of action." (Dkt. #8 at ¶ 11). The parties' agreement, however, designates Nebraska as the exclusive forum for "*all* suits, actions, and proceedings" related to the insurance policy (Dkt. #4 at ¶ 5 (emphasis added)). It does not limit its scope to only breach of contract claims. Giving the terms their plain and ordinary meaning, the language encompasses tort claims as well as breach of contract claims, so long as they relate to the insurance policy. *See Kasel*, 865 N.W.2d at 738.

Indeed, courts in the District of Nebraska have come to similar conclusions when interpreting comparable language. *See, e.g.*, *Duncan Aviation, Inc. v. Flexjet, LLC*, No. 4:24-CV-3004, 2025 WL 3124665, at *3–5 (D. Neb. June 24, 2025) (interpreting the language "any suit"); *BuilderTrend Sols., Inc. v. VBConversions, LLC*, No. 8:17CV195, 2017 WL 6017507, at *7 (D. Neb. Oct. 4, 2017) (holding that copyright claims "relate to" a parties' agreement). This dispute falls within the language of the forum-selection clause, and the private interest factors therefore weigh in favor of transfer. *See Weber*, 811 F.3d at 766–68.

## II. Public Interest Factors

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation modified).

### A. Administrative Difficulties Flowing from Court Congestion

The first public interest factor focuses on "docket efficiency." *In re TikTok, Inc.*, 85 F.4th 352, 363 (5th Cir. 2023) (citation modified). "One element to be considered stems from the administrative difficulties that arise when courts become congested with litigation that should have been handled at its place of origin." *Alaniz v. Liberty Life Assurance Co. of Bos.*, No. 1:18-CV-297, 2018 WL 11428242, at *7 (E.D. Tex. Oct. 4, 2018); *see In re Clarke*, 94 F.4th 502, 509–10 (5th Cir. 2024). Moreover, the Court does not give weight to Plaintiff's choice of forum in weighing the administrative difficulties of the respective forum. *See Atl. Marine*, 571 U.S. at 63.

Judicial caseload statistics favor transfer because docket congestion is higher in the Eastern District of Texas compared to the District of Nebraska. Specifically, as of June of 2026, the District

of Nebraska had 537 pending cases per judgeship whereas the Eastern District of Texas had 888.[1] In light of these statistics, the Court finds that docket congestion favors transfer to the District of Nebraska. *See Marquis Software*, 2026 WL 2912908, at *11.

**B. Local Interest**

The second public interest factor is the local interest in having localized disputes decided at home. *Volkswagen II*, 545 F.3d at 315. "The Court must analyze the forum's connections with the events that gave rise to the suit—not simply generalized connections to the forum." *Intell. Ventures I LLC, v. United Parcel Serv., Inc.*, No. 1:26-CV-100, 2026 WL 3203487, at *6 (W.D. Tex. Oct. 23, 2026) (citation modified). Here, a Texas entity purchased an insurance policy to insure its property in Texas (Dkt. #1-2 at p. 2). Defendant is a Nebraska entity who sold insurance in Texas (Dkt. #1-2 at p. 2). While this Court has previously acknowledged the "strong local interest" in resolving disputes in a district where a corporate party is headquartered, this consideration does not carry more weight than the location of the actions giving rise to the suit. *Marquis Software*, 2026 WL 2912908, at *11 (citation modified); *TikTok*, 85 F.4th at 364 (citation modified) ("We look not to the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit."). Indeed, a recent decision by the Fifth Circuit raises a question as to whether the Court may even consider a parties' location when weighing this factor. *See Clarke*, 94 F.4th at 511 ("We focus on the *events*—not the *parties*."). Therefore, the Court focuses on the events giving rise to the suit, and acknowledges that Texas has

[1] *Federal Court Management Statistics*, United States Courts, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2026.pdf.

a strong local interest in litigating property insurance disputes at the location of the insured property. *See id.* This factor therefore weighs against transfer. *See TikTok*, 85 F.4th at 364–65.

**C. Familiarity of the Forum with the Governing Law**

The third public interest factor is each district's "familiarity . . . with the law that will govern the case." *Volkswagen II*, 545 F.3d at 315. "This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" *TikTok*, 85 F.4th at 365 (quoting *In re Radmax*, 720 F.3d 285, 289 (5th Cir. 2013)).

Plaintiff argues that this factor weighs against transfer because "[t]his Court routinely applies Texas common law and statutory law when deciding first party insurance cases such as this . . . ." (Dkt. #8 at ¶ 17). Further, Plaintiff explains that "[a]ttempts by a Nebraska court to interpret and apply Texas law could misapply or materially weaken Texas law." (Dkt. #8 at ¶ 17). However, a court's familiarity or unfamiliarity with a forum is not enough. As the Supreme Court has observed, "federal judges routinely apply the law of a State other than the one in which they sit." *Atl. Marine*, 571 U.S. at 67. The Court's inquiry is more narrow than that: governing law weighs against transfer when a party raises an "exceptionally arcane feature[] of Texas law . . . ." *Id.* at 67–68. Plaintiff raises no argument explaining why the laws relevant to this dispute are exceptionally arcane (*See* Dkt. #8 at ¶ 17). Because the District of Nebraska is capable of applying Texas law, and Plaintiff identifies no arcane areas of Texas law relevant to this dispute, the Court finds that this factor is neutral. *See TikTok*, 85 F.4th at 365–66.

**D. Avoidance of Unnecessary Conflict of Laws Problems**

Finally, the Court will consider "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation modified). This factor "looks to the likelihood of unnecessary problems" related to choice of law issues. *Davis v. Meta*

*Platforms, Inc.*, No. 4:22-CV-1001, 2023 WL 4670491, at *17 (E.D. Tex. July 20, 2023). While the parties did not extensively brief the choice-of-law issues in this case, the Fifth Circuit has instructed district courts to "make a good-faith attempt to ascertain which jurisdiction's law will apply." *TikTok*, 85 F.4th at 366.

The Court will address each of Plaintiff's causes of action, and identify the substantive law that will likely govern each. First, the breach of contract claim will likely be governed under Nebraska law because the parties included a Nebraska choice-of-law provision. *See FrontStream Payments, Inc. v. Edwards*, No. 8:15CV273, 2016 WL 7443246, at *3 n.2 (D. Neb. Aug. 1, 2016) (citation modified) ("Under Nebraska law, unless contrary to public policy, choice-of-law provisions are usually enforced.").

Second, the fraud claim will likely be governed under Texas law because, in fraud cases, Nebraska's choice-of-law rules consider the location of the property. *Ermer v. Case Corp.*, No. 8:01CV338, 2002 WL 1796438, at *2 (D. Neb. Aug. 5, 2002) (citation modified) (explaining that courts must consider "the place where a tangible thing which is the subject of the transaction . . . was situated at the time").

Third, Plaintiff's claims under various Texas insurance statutes do not raise major choice-of-law concerns for the Court. Plaintiff argues that the choice-of-law factor weighs against transfer because there is a "real possibility that the Nebraska [c]ourt would apply Nebraska substantive law . . . [and] Nebraska does not appear to have a private cause of action for a violation of the Nebraska Insurance Code." (Dkt. #8 at ¶ 18). While the Court acknowledges that the court in the District of Nebraska will have to conduct a more extensive choice-of-law analysis to determine what parts—if any—of Texas insurance law apply, this factor does not weigh strongly against transfer.

The Fifth Circuit regularly enforces forum-selection clauses in insurance disputes—even when the desired forum has less favorable remedies. *E.g.*, *Eads v. Spheric Assurance Co., Ltd.*, No. 23-20066, 2023 WL 8613609, at *2 (5th Cir. Dec. 13, 2023) (per curiam) (citation omitted) (unpublished) ("Texas public policy allows enforcement of a forum selection clause mandating a jurisdiction with purportedly less favorable insurance laws . . ."). Moreover, the Court deemed the private interest factors in favor of transfer, so Plaintiff cannot now raise its own private interest considerations when the Court is considering the public interest factors. *See Weber*, 811 F.3d at 766–68.

The Court finds no exceptional problems that the court in the District of Nebraska will face in resolving choice-of-law issues. In all likelihood, the court in the District of Nebraska will merely apply its own insurance code where it finds applicable to this dispute, and Texas's insurance laws where it finds applicable. *See Eads*, 2023 WL 8613609, at *2 (citation modified) ("[I]t is reasonable to enforce a forum selection clause even if Texas has a strong public policy of regulating insurance."). To the extent that Plaintiff's remedies may change after transfer, this is a private interest consideration, and the Fifth Circuit has already determined that unfavorable insurance remedies do not, on their own, warrant refusing to enforce a forum-selection clause. *Noble House, LLC v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 251–52 (5th Cir. 2023). Therefore, this factor is neutral.

## III. The public and private interest factors disfavor transfer.

In sum, all private interest factors weigh in favor of transfer. One public interest factor favors transfer, one public interest factors disfavors transfer, and two public interest factors are neutral. Weighing all of the factors, and giving no greater weight to Plaintiff's choice of forum, the Court finds that the factors weigh in favor of transfer. *See Weber*, 811 F.3d at 766–68. The Court therefore grants Defendant's motion to transfer venue under § 1404(a).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(A) (Dkt. #4) is hereby **GRANTED**.

It is further **ORDERED** that this case be **TRANSFERRED** to the United States District Court for the District of Nebraska.

**IT IS SO ORDERED.**

**SIGNED this 12th day of November, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE